**Robert M. DOODY, Plaintiff,**

v.

**E.F. HUTTON & COMPANY, INC., E.F. Hutton Group, Inc., Viking Petroleum Management, Ltd., VPM 1980 Private Drilling Program, Vemco 1981 Private Drilling Program, and Viking Energy Management Company, Defendants.**

**Vincent S. VELIE, Plaintiff,**

v.

**E.F. HUTTON & COMPANY, INC., E.F. Hutton Group, Inc., Viking Petroleum Management, Ltd., VPM 1980 Private Drilling Program, Defendants.**

**Nos. Civ. 4–83–588, Civ. 4–83–753.**

United States District Court, D. Minnesota.

June 1, 1984.

John A. Cochrane and Ronald D. Alley, Cochrane & Bresnahan, St. Paul, Minn., for plaintiffs.

Maureen E. McGrath, Kutak, Rock & Huie, Omaha, Neb., and Roger P. Brosnahan, Minneapolis, Minn. (of counsel), Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., for defendants E.F. Hutton & Co., Inc. and E.F. Hutton Group, Inc.

Robert R. Weinstine, Winthrop, Weinstine & Sexton, St. Paul, Minn., and Richard F. Popp, Tulsa, Okl. (of counsel), Holliman, Langholz, Runnels & Dorwart, Tulsa, Okl., for defendants Viking Petroleum Management, Ltd., VPM 1980 Private Drilling Program, VEMCO 1981 Private Drilling Program and Viking Energy Management Co.

### MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

These securities fraud cases are before the Court on plaintiffs' motions for dismissal of defendants' counterclaims pursuant to Federal Rule of Civil Procedure 12(b) and (f), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56.

### FACTS

In 1980 each plaintiff, Robert Doody and Vincent Velie, separately purchased a limited partnership interest in a private oil and gas tax shelter known as VPM 1980 Private Drilling Program (VPM 1980). In 1981, Doody also purchased an interest in another private oil and gas tax shelter known as VEMCO 1981 Private Drilling Program (VEMCO 1981). The details of these transactions can be found in the Court's December 23, 1983 Memorandum and Order.

In their amended complaints, plaintiffs allege causes of action for violation of section 12(2) of the Securities Act of 1933, 15 U.S.C. § 771(2), section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5, Minn.Stat. §§ 80A.01 and 80A.23, and common law fraud. Among other allegations, plaintiffs allege that the defendants made a number of oral misrepresentations.

In their answers, defendants each allege virtually identical counterclaims against the plaintiffs. Defendants claim that plaintiffs warranted, at the time of entering into the transactions, that they were not relying on any representations other than those contained in the prospectus, and that they would not sue the defendants based on any alleged oral misrepresentations by the defendants. The defendants allege in their counterclaims that if plaintiffs do not prevail on their misrepresentation claims that defendants should recover their attorneys' fees and costs incurred in defending these actions because the plaintiffs will have breached their warranties.

Specifically, defendants allege that each plaintiff signed a subscription agreement for VPM 1980 which contains the following integration clause:

> The undersigned has received the Memorandum, and has carefully reviewed the Partnership Agreement and the Memorandum, and has relied on the information contained therein and information otherwise provided to him in writing by the General Partner.... No oral representations have been made or oral information furnished to the undersigned or his advisor(s) in connection with the offering of the Units which were in any way inconsistent with the Memorandum.
>
> ....
>
> .... The undersigned or his advisors have such knowledge and experience in financial, tax and business matters to enable him to utilize the information

made available to him in connection with the offering of the Units to evaluate the merits and risks of the prospective investment and to make an informed investment decision with respect thereto.

Subscription Agreement, VPM 1980 Private Drilling Program, ¶ 2. The subscription agreement also contained an indemnification clause in which each plaintiff agreed "to indemnify and hold harmless the Partnership, the General Partner, its affiliates and participating broker-dealers from and against all damages, losses, costs and expenses (including reasonable attorneys' fees) which they may incur by reason of ... any breach of the representations and warranties made by the undersigned herein ...." Subscription Agreement ¶ 5. Doody signed a subscription agreement with similar provisions for VEMCO 1981. The defendants contend that the quoted provisions require the plaintiffs to indemnify the defendants for their attorneys' fees and costs, if the defendants prevail on the merits in these cases.

## DISCUSSION

Plaintiffs present three arguments for dismissing the counterclaims. First, plaintiffs argue that the provisions of the subscription agreement relied upon by the defendants are void and unenforceable pursuant to section 14 of the Securities Act of 1933, 15 U.S.C. §§ 77n, section 29 of the Securities Exchange Act of 1934, 15 U.S.C. § 78cc, and Minn.Stat. § 80A.23, subds. 9 and 10 which make waivers of state and federal securities laws void. Second, plaintiffs argue that a party who fraudulently induces another to enter into a contract cannot evade liability by incorporating a disclaimer of fraud into the contract. Finally, plaintiffs argue that the defendants did not allege sufficient facts in their counterclaims to conclude that plaintiffs have breached the alleged representations and warranties.[1]

---

1. In their brief, the Hutton defendants list a number of specific examples of plaintiffs' alleged breach. It is clear from this partial list that the counterclaims would have been unnec-

essarily long if the defendants had put more detail into their counterclaims. The plaintiffs are on notice of what the defendants plan to prove, and accordingly, the Court finds that the

In response, the Viking defendants[2] argue that there are issues of fact to be resolved, but do not specify the facts to be resolved. Beyond that, the Viking defendants rely on the Hutton defendants'[3] arguments in opposing plaintiffs' motion.

The Hutton defendants argue that the provisions in the subscription agreements are not a waiver of plaintiffs' rights under the securities laws. If the Court finds the provisions are a waiver, then the Hutton defendants contend that there are questions about plaintiffs' knowledge and awareness which cannot be determined in a motion for summary judgment. Finally, the Hutton defendants argue that an agreement to indemnify is enforceable under both federal and state law.

■ The first issue the Court must resolve is whether the provisions in the subscription agreement constitute a waiver of the applicable securities laws. Waiver of the securities laws are unenforceable unless the party granting the waiver or release of a material claim either knew of the claim before making the waiver or should have known of the claim after reasonable inquiry. *Goodman v. Epstein*, 582 F.2d 388, 402–05 (7th Cir.1978), *cert. denied*, 440 U.S. 939, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979).

As evidence that plaintiffs did not waive their rights under the federal securities laws, defendants point to a provision in the VPM 1980 subscription agreement which provides as follows:

Notwithstanding any of the representations, warranties, acknowledgments or agreements made herein by the undersigned, the undersigned does not thereby or in any other manner waive any rights

granted to the undersigned under federal or state securities laws.

Subscription Agreement, VPM 1980 Private Drilling Program, ¶ 6(c). Accordingly, defendants argue that the provisions in the subscription agreement are not a waiver or release of plaintiffs' rights under the federal securities laws, but rather, are evidence of plaintiffs' non-reliance on any information outside the prospectus.

■ In *Meason v. Gilbert*, 236 Ga. 862, 226 S.E.2d 49 (1976), the Georgia Supreme Court faced the issue of what effect was to be given to an integration clause in a stock purchase agreement, similar to the integration clause found in the subscription agreements in this action, which stated that no representations other than those contained in the prospectus induced the plaintiff to purchase the securities. The court concluded that the integration provision had "evidentiary value on the question of whether representations were made to the purchaser inducing the stock purchase other than those contained in the prospectus," and thus, was not a waiver of the plaintiff's rights.[4] *Gilbert*, 226 S.E.2d at 50. This Court, after considering the *Gilbert* opinion and the briefs and arguments of counsel, has concluded that the provisions in the VPM 1980 and VEMCO 1981 subscription agreements are not a waiver of the plaintiffs' rights under the federal and state securities laws, but rather, are evidence of plaintiffs' non-reliance on the alleged oral misrepresentations.

■ Even though the Court has found that the provisions in the subscription agreements are not a waiver of the applicable securities laws, the troubling issue of whether defendants should be allowed to

---

defendants alleged sufficient facts in their counterclaims.

**2.** In the *Doody* action the Viking defendants are VPM 1980 Private Drilling Program, Viking Petroleum Management, Ltd., VEMCO 1981 Private Drilling Program and Viking Energy Management Company. In the *Velie* action the Viking defendants are VPM 1980 Private Drilling Program, and Viking Petroleum Management, Ltd.

**3.** The Hutton defendants are E.F. Hutton & Company, Inc. and the E.F. Hutton Group Inc.

**4.** The court added that in *In the Matter of Linder, Bilotti & Co., Inc.*, 42 SEC Decisions, pp. 407, 408 (1964), the SEC indicated that the inclusion of an integration clause knowing it to be false might in itself be a deceptive practice, and accordingly, violate the federal securities laws. *Gilbert*, 226 S.E.2d at 51.

use the idemnity provision to recover attorneys' fees and costs still remains. The question of whether a party may seek indemnity in cases involving federal securities violations is governed by federal law. *Odette v. Shearson, Hammill & Co.*, 394 F.Supp. 946, 954 n. 9 (S.D.N.Y.1975). Defendants acknowledge that there is almost no case law which discusses the question of enforceability of indemnity agreements between a plaintiff-investor and a defendant-broker.

Defendants cite *Maryville Academy v. Loeb Rhoades & Co.*, 530 F.Supp. 1061, 1071–73 (N.D.Ill.1981), as supporting their position that they are entitled to enforcement of the indemnity agreements. In *Maryville*, the plaintiffs (defendant-broker's customers) signed a form entitled "Customer's Agreement and Consent to Loan of Securities" which provided in part as follows:

> In the event any action or proceeding is commenced or claim or demand made by any person, firm, corporation or other entity against any account of the undersigned, or the securities or other property, therein, or against you in connection with such account, securities or other property, the undersigned agrees to reimburse you for any loss, cost or expense, including reasonable attorney's and accountant's fees, which may be incurred by you in connection therewith. In the event any such claim or demand is made, you shall be entitled to take such reasonable steps as you deem advisable, including the withholding of payment to the undersigned or any part or all of any such account, or the securities or other property therein, and the cancellation or noncompliance with all orders with respect to such account. Nothing herein contained shall be construed as an obligation on your part to take any steps in connection with any such action, proceeding, claim or demand.

*Maryville*, 530 F.Supp. at 1071. Based upon this express indemnity provision the defendant-broker alleged a counterclaim for indemnification. The court stated that it had "reservations regarding the applicability of the indemnity provision to the situation presented by this case, where the customer accuses [the broker] of fraud in connection with the customer's account." *Maryville*, 530 F.Supp. at 1072. But the court declined to rule on the enforceability of the clause on a motion for failure to state a claim stating that it wished to hear testimony regarding the intent of the parties at the time they entered into the agreement. *Maryville*, 530 F.Supp. at 1072–73. Thus, the *Maryville* court did not hold that such an indemnity provision would be enforced. Accordingly, the defendants have failed to present any federal law supporting their position that the indemnity provision in this action should be enforced.

■ The Court finds that enforcing an indemnity provision such as the one in the instant action would discourage prospective plaintiffs from bringing securities fraud actions whenever there is an integration clause in a subscription agreement. Prospective plaintiffs would be discouraged because the plaintiffs would be running the risk of incurring substantial liability for attorneys' fees and costs. Since the securities laws are a remedial measure intended to encourage the prosecution of securities fraud actions, the Court refuses to enforce this indemnity provision. Of course, as stated herein, the subscription agreement may be used at trial as evidence of plaintiffs' non-reliance on the alleged oral misrepresentations.

Accordingly, **IT IS ORDERED** that plaintiffs' motions for summary judgment on the defendants' counterclaims are granted.