Frederick ZISSU, Plaintiff-Appellant,

v.

BEAR, STEARNS & CO., a New York Limited Partnership, Barry West, Carleton A. Hostrom, Encore Exploration, Inc., a Delaware Corporation, Hearts Energy, Inc., a New York Corporation, Gerald B. Cramer, Richard D. Segal, Edward J. Rosenthal, John Doe and Richard Roe, Inc., Defendants-Appellees.

No. 1322, Docket 86-7177.

United States Court of Appeals, Second Circuit.

Argued May 13, 1986.

Decided Nov. 10, 1986.

See also 627 F.Supp. 687.

Thomas R. Newman, New York City (Benjamin Vinar, Robert H. Jaffe, Siff, Newman, Rosen & Parker, P.C., New York City, of counsel), for plaintiff-appellant.

Gerald Walpin, New York City (Steven S. Miller, Brian G. Lustbader, Rosenman Colin Freund Lewis & Cohen, New York City, of counsel), for defendants-appellees Encore Exploration, Inc., Hearts Energy, Inc., Gerald B. Cramer, Richard D. Segal and Edward J. Rosenthal.

Max Gitter, New York City (Robert P. Haney, Jr., Clifford Peterson, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for defendants-appellees Bear, Stearns & Co. and Barry West.

Before LUMBARD, CARDAMONE, and WINTER, Circuit Judges.

CARDAMONE, Circuit Judge:

This is an appeal by a plaintiff investor who sued his investment's sponsors for securities fraud. At trial, defendants prevailed on their counterclaim that contained an indemnity clause providing that plaintiff would pay defendants' attorneys' fees if

they had to defend against a suit by plaintiff. After a favorable jury verdict, defendants moved alternatively for attorneys' fees pursuant to § 11(e) of the Securities Act of 1933. This appeal raises a troubling question involving an apparent inherent contrariety between a "no representations have been made" clause and an "indemnity" clause protecting sponsors from losses arising from the breach of warranty clause contained in the same agreement. Yet, we need not reach or determine this issue because we hold that the indemnity clause in the subject agreement is not specific enough to hold plaintiff liable for defendants' defense costs. Consequently, we hold that defendants are not entitled to relief on their counterclaim. The award of attorneys' fees made by the district court is affirmed nevertheless on the ground that this securities fraud claim was frivolous.

## I  BACKGROUND

Plaintiff Frederick Zissu appeals from a March 28, 1986 amended judgment entered after a jury trial in the United States District Court for the Southern District of New York (Weinfeld, J.). The judgment dismissed plaintiff's complaint for securities fraud and awarded judgment to defendants on their counterclaim for losses arising from breach of warranties made by the plaintiff in a December 15, 1981 Subscription Agreement. Plaintiff also appeals from an award to defendants of attorneys' fees under § 11(e) of the Securities Act of 1933, 15 U.S.C. § 77k(e) (1982). The $555,000 award, which constitutes defendants' litigation costs, as stipulated by the parties, was based either on defendants' meritorious counterclaim or on § 11(e).

Plaintiff is a sophisticated investor who commenced this action to recover losses sustained from his participation in Encore Exploration 1981–LC, L.P. (Encore 1981), an oil and gas tax shelter limited partnership. He alleged that defendants Encore Exploration, Inc. (Encore), the sponsor of the program, Bear, Stearns & Co. (Bear Stearns), the dealer-manager and a special limited partner, and other defendants acting in concert violated §§ 12(2) and 15 of the Securities Act of 1933, 15 U.S.C. § 77l (2) and § 77o (1982), § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5, 17 C.F.R. § 240.-10b–5 (1986). Plaintiff claims to rely on a series of alleged written and oral misstatements and omissions of material facts contained in documents prepared by representatives of Encore and Bear Stearns, which he contends induced him on December 29, 1981 to purchase ten units of Encore 1981 at a total cost of $1.5 million.

The alleged misstatements were made to plaintiff (1) orally by defendants Gerald B. Cramer, an Encore officer, and Barry West, a registered representative at Bear Stearns, (2) in a confidential Encore Fact Sheet prepared by Bear Stearns and distributed to plaintiff on December 1, 1981 by defendant West, and (3) in the Private Offering Memorandum (the POM) for Encore 1981, also distributed to plaintiff on December 1, 1981. The conversations and documents allegedly misstated the degree of risk involved in the drilling program, as well as the financial stability of Energetics, Inc., one of the operators designated to drill wells for the partnership.

In order to be exempted from the registration requirements of § 5 of the Securities Act of 1933, 15 U.S.C. § 77e, Encore sought an exemption under SEC Rule 146, 17 C.F.R. § 230.146 (1974), for non-registered sales. To comply with this provision, defendants could accept plaintiff as a partner only after he had demonstrated that he understood and could bear the risks associated with the investment. In the Subscription Agreement and Confidential Offeree Questionnaire, Zissu represented himself to be a sophisticated and wealthy investor. In the Confidential Offeree Questionnaire, Zissu stated that he had substantial experience in various investment areas including marketable securities, commodities, oil and gas programs, limited partnerships, and tax deferred investments generally. In fact, plaintiff is a name partner in a New York City law firm and

Chairman of the Board of two public corporations, one listed on the New York Stock Exchange, the other listed on the American Stock Exchange. He has also engaged in substantial and risky investment activities on his own account.

In the December 15, 1981 Subscription Agreement he stated that he had sufficient knowledge and experience in business matters to enable him to evaluate the merits of his investment. He admitted to being informed that his investment "is a speculative one and involves a high degree of risk." Further, Zissu acknowledged that no representations or warranties had been made to him by Encore or its agents outside of information contained in the POM. Finally, plaintiff warranted that his statements were true and correct. In Paragraph 8 of the Agreement plaintiff agreed to indemnify and hold harmless the partnership and each general and limited partner "against *any and all loss,* damage or liability due to or *arising out of a breach* of any representation or warranty" made by plaintiff.

At the same time Zissu's rights under the federal securities laws were preserved. The Agreement specifically stated:

> Notwithstanding any of the representations, warranties, acknowledgments or agreements made herein by me, I do not thereby or in any other manner waive any rights granted to me under federal or state securities laws.

Thus, by bringing a claim alleging material oral and written misstatements upon which he had relied, Zissu effectively admitted a breach of the acknowledgment he made that no representations or warranties had been made to him outside the POM. As a result defendants argued that plaintiff should indemnify them for losses they sustained on account of that breach, including attorney's fees for defending against plaintiff's suit.

After a 12–day trial the jury returned a verdict for defendants on plaintiff's securities law claims and on defendants' breach of warranty counterclaim. The jury ruled against plaintiff on all his claims because it found either that: 1) the documents and conversations referred to did not contain material omissions or misstatements of fact about Energetics' financial stability, the probability of the venture's success, the proposed rates of return and anticipated cash flow from the project, or the nature of the wells being drilled; or 2) Zissu knew or should have known of the omissions or misstatements; or 3) Zissu discovered the material omissions or misstatements of fact more than one year before he filed his lawsuit. Encore's and Bear Stearns' damages were stipulated to be $320,000 and $235,000 respectively—the amount of defense expenses each incurred. Plaintiff then moved for judgment n.o.v. on defendants' counterclaims and for a new trial asserting that defendants' counterclaims were barred by contract and securities law principles and by public policy considerations. Defendants cross-moved for attorneys' fees pursuant to § 11(e) alleging that plaintiff's securities claims were frivolous.

The district court denied plaintiff's motion, holding that plaintiff's promise to indemnify defendants for all damages arising from his warranty breach obligated him to pay defendants' attorneys' fees. The district judge also concluded that plaintiff's right to prosecute his securities law claims had not been precluded by allowing defendants to sue for breach of warranty, finding that the counterclaim was based upon matters wholly independent of any alleged violations of the securities laws: "Defendants did not seek to hold Zissu liable for the exercise of his rights under the securities laws, but rather for his breaches of the representations he made in the agreement." Public policy would not be violated by enforcing the indemnification clause, the court observed, since Zissu himself made the written representations and then repudiated them to allege securities fraud violations.

Finally, the district court found that Zissu's case was the prototype of a securities lawsuit brought in bad faith by a disappointed investor without an arguable right to relief. It granted defendants'

cross-motion invoking the alternate theory of § 11(e) to award defendants the same attorneys' fees the jury awarded them on their counterclaim. Thus, as noted, we hold that defendants were not entitled to relief on their counterclaim, but affirm the award made by the district court under § 11(e).

## II CONTENTIONS

Plaintiff raises several arguments relating to the unenforceability of the warranties he signed. His first argument is based upon the 1933 and 1934 Securities Acts. Section 14 of the 1933 Act, 15 U.S.C. § 77n provides:

Any condition, stipulation, or provision binding any person acquiring any security to waive compliance with any provision of this subchapter or of the rules and regulations of the Commission shall be void.

A similar provision is contained in Section 29(a) of the 1934 Act, 15 U.S.C. § 78cc(a). Because of the waiver-is-void sections and further because the indemnity clause Zissu signed explicitly preserved his rights to sue under the securities laws, he urges that enforcing the warranties effectively ignores and bypasses his rights under the non-waiver provisions. He claims that he is being penalized for invoking his rights under the securities laws and that such a penalty violates the contractual provisions of the Subscription Agreement itself, because that Agreement expressly reserved his right to assert claims under the securities acts.

Plaintiff's second contention is that even if the general American Rule prohibiting the award of attorneys' fees against the losing party on a non-frivolous claim may be bypassed because of a contractual agreement to that effect, such an agreement must *explicitly* provide for the award of attorneys' fees in a securities case; it may not merely refer generally to "any and all damages" sustained by defendants. Finally, plaintiff asserts that as a matter of policy issuers will not be deterred from securities laws fraud if an investor's signed statement that no representations were made to him outside the prospectus essentially prevents a subsequent action for securities fraud. Theoretically an issuer could defend almost any lawsuit against it based on its misrepresentations by interposing a breach of warranty claim, effectively chilling investors from bringing securities fraud cases for fear of having to pay defendant's costs.

Defendants rebut these assertions with two principal arguments. Because plaintiff lost on all his claims, the situation here is not one where a defendant could benefit from its own fraud by collecting its costs regardless of the outcome on the merits. Although in this connection the district court's holding is a broad one, it did state expressly that it was not addressing whether enforcement of *all* indemnity provisions between an investor and any issuer of securities may be contrary to public policy. Thus, the district court left open the possibility that a prevailing securities law plaintiff would *not* have to pay defendant's costs, even were he to have breached his warranties. Also, defendants note that their counterclaim is not based upon or in any way related to plaintiff's assertion of his rights under the federal securities laws, but only upon his warranty breach. They contend therefore that neither the Securities Acts nor plaintiff's reservation of rights in the Subscription Agreement is violated by permitting defendants to counterclaim for plaintiff's breach of warranty.

## III DISCUSSION

A. *Attorneys' Fees Based on Counterclaim*

We find that the indemnity provision is not sufficiently specific to hold Zissu liable for defendants' defense costs. In *Tartell v. Chelsea National Bank*, 351 F.Supp. 1071 (S.D.N.Y.), *aff'd per curiam*, 470 F.2d 994 (2d Cir.1972), the plaintiff commenced an action alleging numerous violations of the 1934 Act. Defendant bank counterclaimed to recover the unpaid balance of its loan, together with interest, counsel fees, and expenses incident to its defense of the

claim. In a promissory note given with its securities purchase plaintiff promised to pay the "Bank all expenses (including expense for legal services of every kind) of, or incidental to, the enforcement of any of the provisions hereof ... [or] any ... collection, compromise or settlement of any of the Security or receipt of the proceeds thereof, by litigation or otherwise...." 351 F.Supp. at 1079 n. 5. Defendants prevailed. The trial court then held that the covenant in the note obligating a losing party to pay all attorneys' fees is enforceable under New York law and, therefore, it enforced the covenant. "[I]f it be argued that Tartell should not be unfairly penalized for asserting claims, as was his right, under the applicable federal statutes, the answer is that he must be charged with realization of the covenant language in his demand note and awareness that his claims might be found wanting on the merits." *Id.* at 1079.

In *Jackson v. Oppenheim*, 533 F.2d 826 (2d Cir.1976), plaintiff lost on his underlying securities claim, but defendant was not awarded attorneys' fees merely because the plaintiff signed a promissory note in which he agreed to pay " 'all costs of collection, including, but not limited to, counsel fees....' " *Id.* at 830. We acknowledged that under New York law a covenant in a note providing for the collection of attorneys' fees expended in "collection" of the note is enforceable. *Id.* at 831. Yet in order to put a plaintiff on notice that he is undertaking to indemnify a defendant for its costs in defending a separate federal securities laws claim, a covenant must be most specific. Thus, we held that defendant, as seller of the stock, was entitled to recover only attorneys' fees he expended in collecting on the promissory notes given by the buyer-plaintiff. Defendant was not entitled to recover costs for defending against the buyer's security action.

Similarly, in *Doody v. E.F. Hutton & Co., Inc.*, 587 F.Supp. 829 (D.Minn.1984), plaintiffs purchased limited partnership interests in private oil and gas tax shelters. They sued for securities fraud though they had warranted in their Subscription Agree-

ments that they had not relied on information outside the prospectus, and that no oral representations had been made inconsistent with the memorandum. *Id.* at 831. The plaintiffs in *Doody*, as here, promised to indemnify and hold harmless the defendants against all " 'damages, losses, costs and expenses (including reasonable attorneys' fees) which they may incur by reason of ... any breach of the representations and warranties made by the undersigned herein....' " *Id.* Defendants counterclaimed alleging that if plaintiffs did not prevail defendants should recover their attorneys' fees incurred in defending the action as plaintiffs would have breached their warranties. Because plaintiffs in *Doody* had retained rights in the Subscription Agreement to assert claims under the federal securities laws—as Zissu did in this case—the district court held that the warranties did not constitute a waiver of plaintiffs' rights to enforce securities fraud claims against defendants, but merely constituted proof that plaintiffs did not rely on any information outside the prospectus. *Id.* at 832.

■ The "any and all damages" clause of the Subscription Agreement in this case did not meet the requisite level of specificity necessary to hold Zissu liable to reimburse Encore and Bear Stearns for defense costs in their successful defense against Zissu's securities claims. The clause Zissu signed did not put him on notice that he would be responsible for defendants' legal fees incurred in the security fraud suit. In fact, no mention of attorney's fees was made in the indemnification clause. Instead, the warranties in question were necessary to exempt the limited partnership from the requirements of the 1933 Act and are so understood by investors. That being the case, the parties had little reason to expect that such warranties might also be the basis for the counterclaim made in the present case. Thus, although New York courts have held that contractual indemnity provisions for attorneys' fees will be enforced, and broad indemnification provisions like the one here should be read to

extend to such fees, *see Lavorato v. Bethlehem Steel Corp.*, 91 A.D.2d 1184, 459 N.Y.S.2d 170 (4th Dept.1983); *Colon v. Automatic Retailers Ass'n Service, Inc.*, 74 Misc.2d 478, 343 N.Y.S.2d 874, 877–79 (N.Y.Civ.Ct.1972), a higher level of specificity is required when attorneys' fees are being assessed against a plaintiff suing for securities fraud. *See Jackson v. Oppenheim*, 533 F.2d at 831. In light of this disposition, we need not address plaintiff's contention that an award of attorneys' fees on a breach of warranty counterclaim will deter meritorious securities fraud suits in contravention of federal policy.

B. *Section 11(e) Cross-Motion*

■ Nonetheless, in granting defendants' cross-motion for attorneys' fees under § 11(e) of the 1933 Securities Act, the district court properly determined plaintiff's suit to be frivolous and upheld the $550,000 judgment under that alternative theory. Section 11(e) of the Act authorizes a court to award attorneys' fees and costs "if the court believes the suit or the defense to have been without merit...." 15 U.S.C. § 77k(e).

To hold that a suit is without merit under § 11(e), a court must find the claim is frivolous or brought in bad faith. *See Aid Auto Stores, Inc. v. Cannon*, 525 F.2d 468, 471 (2d Cir.1975); *Klein v. Shields & Co.*, 470 F.2d 1344, 1347 (2d Cir.1972). In this case, the district court determined Zissu's claim and his conduct of the litigation to be utterly without merit.

> Indeed, any verdict by the jury other than that reported on plaintiff's claims would have been so clearly against and contrary to the weight of the evidence that the Court would have been required to set it aside. If there ever has been a case involving frivolous or bad faith claims, it is this one.

The district judge found plaintiff's evidence to be replete with "blatant contradictions" and "unsubstantiated allegations." He believed the wide divergence in the testimony regarding the relevant facts indicated that one party was not telling the truth; his instructions to the jury therefore suggested that "the irreconcilable differences in testimony is not inadvertence or lack of recollection."

Plaintiff claimed that misrepresentations in the documents he received and in the conversations he had with defendants induced him to invest in Encore 1981. Defendants vehemently denied that any oral or written misrepresentations were made to plaintiff. We have reviewed the relevant documents and agree that they do not give rise to a claim for securities fraud. As a sophisticated investor, Zissu should have known enough not to consider projections to be representations about the future and not to rely on materials outside the POM. In addition, Zissu made contentions in his complaint—and repeated them in the pre-trial order—for which he introduced no supporting evidence. These claims should have been withdrawn once it became plain that there was no proof to establish them. *See Nemeroff v. Abelson*, 620 F.2d 339, 350–51 (2d Cir.1980) (per curiam). As a result of plaintiff's failure to withdraw these unsupported assertions, defendants were compelled to prepare and conduct a defense on allegations for which plaintiff presented no proof.

Moreover, Zissu's own testimony was often confused and contradictory. Since each party had a very different version of what had transpired, credibility was critical. Because the jury ruled against Zissu, the district court properly believed the jury had found some of Zissu's testimony incredible and untrue.

IV  CONCLUSION

Considering the entire record—plaintiff's failure to produce evidence in support of many of his claims, his contradictory testimony, the jury's implicit findings on credibility, and plaintiff's concededly sophisticated background—the district court did not abuse its discretion in finding that plaintiff's claim was frivolous. Further, the record indicates that this lawsuit was both meritless and conducted in bad faith. Thus, though we reverse the jury verdict

for defendants on their counterclaims as a matter of law, we affirm the district court's award of $555,000 attorneys' fees to defendants under § 11(e).

The judgment is affirmed.