Robert D. STRATMORE, Plaintiff,

v.

Leslie COMBS II, et al., Defendants.

George E. LAYMAN, et al., Plaintiffs,

v.

Brownell COMBS II, et al., Defendants.

H. James GRIGGS, Plaintiff,

v.

Brownell COMBS II, et al., Defendants.

Zenya YOSHIDA, Plaintiff,

v.

Brownell COMBS II, et al., Defendants.

Fred L. FREDERICKS, Plaintiff,

v.

Brownell COMBS II, et al., Defendants.

John S. McGONIGLE, Plaintiff,

v.

Leslie COMBS II, et al., Defendants.

CENTRAL BANK AND TRUST
COMPANY, Plaintiff,

v.

John F. McGONIGLE, et al.,
Defendants.

HAMILTON PARTNERS, et
al., Plaintiffs,

v.

Leslie COMBS II, et al., Defendants.

Blas R. CASARES, Plaintiff,

v.

Brownell COMBS II, et al., Defendants.

Richard D. SCHULTZ, Plaintiff,

v.

Leslie COMBS II, et al., Defendants.

SPENDTHRIFT FARM, INC., Plaintiff,

v.

John F. McGONIGLE, et al.,
Defendants.

CONTINENTAL CASUALTY
COMPANY, Plaintiff,

v.

Frank L. BRYANT, et al., Defendants.

Richard D. SCHULTZ, Plaintiff,

v.

Bateman EICHLER, et al., Defendants.

Russell E. CARLISLE, Plaintiff,

v.

SPENDTHRIFT FARM, INC.,
Defendant.

NORTHWOOD THOROUGHBRED
INVESTORS, et al., Plaintiffs,

v.

Charles R. HEMBREE, Defendant.

Nos. C–86–0379–CAL, C–86–1692–CAL, C–86–3474–CAL, C–86–3673–CAL, C–86–3829–CAL, C–86–4129–CAL, C–86–6453–CAL, C–87–0228–CAL, C–87–1129–CAL, C–87–6038–CAL, C–88–0451–CAL, C–88–2577–CAL, C–88–3175–CAL, C–89–1342–CAL and C–89–1915–CAL.
MDL No. 710.

United States District Court,
N.D. California.

Sept. 28, 1989.

Vaughn R. Walker, Pillsbury, Madison & Sutro, San Francisco, Cal., and Stephen M. O'Brien III, Landrum, Shouse & Patterson, Lexington, Ky., for George E. Layman, et al., H. James Griggs and Zenya Yoshida.

John I. Alioto, Alioto & Alioto, San Francisco, Cal., for Robert D. Stratmore and John F. McGonigle.

Thomas E. Kotoske, Palo Alto, Cal., for Frederick L. Fredericks and Richard D. Schultz.

Kay S. Kuns, Santa Ynez, Cal., for Frederick L. Fredericks.

Richard M. Trautwein, Barnett & Alagia, Louisville, Ky., for Blas R. Casares.

Timothy L. Bouscaren, Benesch, Friedlander, Coplan & Aronoff, Cincinnati, Ohio, for Hamilton Partners.

Richard D. Rogovin and Robert D. Jacobs, Bricker & Eckler, Columbus, Ohio, for Richard D. Schultz.

Curt H. Mueller, Cooley, Godward, Castro, Huddleston & Tatum, San Francisco, Cal., and Lawrence Pedley, Pedley, Ross, Zielke & Gordinier, Louisville, Ky., for Brownell Combs, II.

Richard Haas, Lasky, Haas, Cohler & Munter, San Francisco, Cal., for Leslie Combs, II.

Boake Christense, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., and Jack G. Jones, Jr., Wyatt, Tarrant & Combs, Lexington, Ky., for Richard F. Broadbent, III and Bloodstock Research and Statistical Bureau.

Steven M. Umin, Williams & Connolly, Washington, D.C., for Bloodstock Research Information Services, Inc.

M. Laurence Popofsky, Heller, Ehrman, White & McAuliffe, San Francisco, Cal., for Charles R. Hembree and Kincaid, Wilson, Schaeffer & Hembree, P.S.C.

Ann G. Daniels and, Jerome I. Braun, Farella, Braun & Martel, San Francisco, Cal., for Spendthrift Farm, Inc. and Central Bank & Trust of Lexington.

Thomas K. Bourke, Riordan & McKinzie, Los Angeles, Cal., for Frank L. Bryant.

James E. Burns, Jr., Brobeck, Phleger & Harrison, San Francisco, Cal., for Bateman Eichler, Hill Richards, Inc. and Robert J. McGuinness.

Garth Guy, Columbus, Ohio, in pro. per.

Robert C. Vanderet, O'Melveny & Myers, Los Angeles, Cal., for Gibson, Dunn & Crutcher.

## OPINION AND ORDER

LEGGE, District Judge.

These consolidated cases arose from the sale of securities of Spendthrift Farms, Inc. by certain defendants to plaintiffs in a private placement transaction. The complaints asserted claims under the federal securities laws, state securities laws, and common law. After extensive pretrial and trial proceedings, summary judgments or directed verdicts were granted in favor of some defendants, and the jury found in favor of the remaining defendants.

Some defendants counterclaimed against plaintiffs for the attorneys' fees they incurred in the defense of these cases, and they now move for summary judgment on those claims. Defendants Brownell Combs, II and Garth Guy move to file similar counterclaims. Plaintiffs oppose those motions and themselves move for

summary judgment against the counter-claims.

The issue addressed in this opinion is whether defendants can recover their attorneys' fees from plaintiffs under the terms of the Subscription Agreement, the document under which plaintiffs purchased their shares of Spendthrift.[1] This court has already denied defendants' motions and granted plaintiffs' motions in open court. This opinion is to record the court's reasons for that decision.[2]

## I.

When plaintiffs expressed their interest in purchasing shares of Spendthrift, they received a lengthy private placement memorandum. The private placement memorandum included the Subscription Agreement. Those plaintiffs who purchased shares of Spendthrift were required to execute the Subscription Agreement and deliver it to Spendthrift and to the selling stockholders.

In paragraph number four of the Subscription Agreement, the purchasing plaintiffs were required to represent and warrant twenty-two facts and legal conclusions, spread over three pages of single spaced type. Construed as a whole, the representations and warranties were obviously intended to enable Spendthrift and the selling stockholders to preserve the private placement exemption under the Securities Act of 1933. However, some of the representations and warranties go beyond that objective.

Paragraph four is followed by an indemnification clause. That indemnification clause is what is at issue in these motions. The clause states as follows:

5. *Indemnification.* The foregoing representations and warranties are made by the Subscriber [plaintiff] with the intent that they may be relied upon in determining his qualification and suitability to purchase Shares, and the Subscrib-er [plaintiff] hereby agrees that such representations and warranties shall survive his purchase thereof. *The Subscriber [plaintiff] hereby agrees to indemnify and hold harmless* the Company, the Sellers and agents of each of them [defendants] *from and against any losses, claims, damages, liabilities, expenses (including attorneys' reasonable fees and disbursements),* judgements and amounts paid in settlement *resulting from the untruth of any of the warranties and representations contained herein,* or the breach by the Subscriber [plaintiff] of any of the covenants made by him herein. Notwithstanding the foregoing, however, no representation, warranty, acknowledgement or agreement by the Subscriber [plaintiff] made herein shall in any manner be deemed to constitute a waiver of any rights granted to him under Federal or State securities laws.

(Emphasis added). Defendants contend that by virtue of that clause they are entitled to recover from plaintiffs the reasonable attorneys' fees and costs incurred by defendants in their successful defense of this litigation. Defendants assert that, as a result of the judgments in defendants' favor and the testimony given by plaintiffs during the trial, plaintiffs have breached some of the representations and warranties contained in paragraph four. And defendants point to the provision of the indemnification clause which expressly provides for the recovery of reasonable attorneys' fees and disbursements.

The court need not discuss each of the representations of warranties which were allegedly breached by plaintiffs during the course of this litigation. Some of the breaches are admitted. And the court will assume that the representations or warranties alleged by defendants were breached by plaintiffs. The court does note, however, that the breaches did not result in the

---

1.  There are no genuine issues of material fact in these motions. The decisions are made by construing the Subscription Agreement and by applying statutory and case law.

2.  Defendants also moved to recover their attorneys' fees under certain statutory provisions and under common law. This court has made a separate ruling on those motions, and they are not the subject of this opinion.

loss of the private placement exemption. Defendants' claims are not based on any loss of that exemption, but instead defendants seek to recover their attorneys' fees and costs incurred in the successful defense of these cases.

## II.

In general, contracts for indemnity and the recovery of attorneys' fees and costs are enforceable. *Wagner v. Benson,* 101 Cal.App.3d 27, 36, 161 Cal.Rptr. 516, 522 (1980); *Michael–Regan Co., Inc. v. Lindell,* 527 F.2d 653, 656–58 (9th Cir.1975). The problem here is that this general principle of enforceability overlaps with, and indeed conflicts with, a policy of the federal securities laws expressed by both statutes and case law. That policy is to preserve the power of securities purchasers to enforce their rights under the securities laws. As a result of that policy, courts have approached with caution agreements which could waive or restrict those rights of enforcement. Research has disclosed no authority in this circuit which directly resolves this conflict.

This court concludes that the indemnity agreement at issue here does not encompass the right of defendants to recover their attorneys' fees expended in their successful defense. The court reaches that conclusion by interpretation of the indemnity clause itself, and by the application of the federal policy. This court does not conclude that *no* indemnity agreement could *ever* shift the expenses of a successful defense to securities plaintiffs. Rather, this decision is based upon the court's interpretation of *this* indemnity agreement, against the backdrop of the public policy expressed by the statutes and the cases.

## III.

First, the language of the indemnity clause itself:

As stated, the representations and warranties made in paragraph four—the breach of which triggers the indemnification clause in paragraph five—are primarily intended to preserve the private placement exemption. That intent is not derived just from paragraph four, but also from the first sentence of the indemnification clause. It states that the representations and warranties are made "with the intent that they may be relied upon in determining [plaintiff's] qualification and suitability to purchase shares." This language is to protect Spendthrift and the selling shareholders from the consequences of a plaintiff being unqualified, or the shares being unsuitable for his investment, and hence the private placement exemption being lost.

The indemnity clause is also sensitive to not requiring the purchasers to waive their rights under the federal or state securities laws. This is stated in the last sentence of the clause, which provides that in spite of the agreement to indemnify,

"no representation, warranty, acknowledgment, or agreement by [plaintiff] made herein shall in any manner be deemed to constitute a waiver of any rights granted to him under Federal or State securities laws."

The sentence can be interpreted as meaning that if a purchaser does sue for alleged violations of the securities laws, all rights and remedies would be governed by those laws and not by the terms of the indemnity clause. That is a reasonable interpretation in light of the statutory and case law which the court will now discuss.

## IV.

Under section 14 of the Securities Act of 1933, 15 U.S.C. § 77n, securities purchasers cannot waive the sellers' compliance with the securities laws. The last sentence of this indemnification clause preserves that position, and the clause is expressly not such a waiver. In light of that statutory provision, courts have been careful in securities cases to preserve the rights of private action under the securities laws. But the results have not been uniform.

Some cases have enforced indemnity clauses in litigation involving securities. The court in *Tartell v. Chelsea National Bank,* 351 F.Supp. 1071, 1079 (S.D.N.Y. 1972) *aff'd,* 470 F.2d 994 (2d Cir.1972) (*per curiam* ), enforced an attorneys' fees provision against the maker of a note who had

unsuccessfully sued the lender for securities fraud. And the court in *Samuels v. Wilder*, 871 F.2d 1346 (7th Cir.1989), enforced an indemnity clause which read:

> The Owner [plaintiff] agrees to indemnify the Nominee, his successors, and assigns, and to hold Nominee harmless from all liability, loss, expenses, damages, costs and attorney's fees that Nominee may at any time incur by reason of any type of inquiry, action or suit which may be brought against him or made of him by any person, firm, corporation, or governmental agency or authority or anyone else by reason of the nomineeship.

*Id.* at 1348. The *Samuels* court, applying state law and without discussing federal securities law, interpreted the clause as a standard indemnity provision and required plaintiff to reimburse the Nominee for the attorneys' fees it spent defending plaintiff's action for securities fraud and misrepresentation. *Id.* at 1352. To the extent that *Tartell* and *Samuels* involved interpretation of the language of specific indemnity clauses, they are of course not controlling on the clause at issue here.

The strongest position against enforcement of such indemnity provisions was stated in *Doody v. E.F. Hutton & Co.*, 587 F.Supp. 829 (D.Minn.1984). The plaintiffs represented in purchasing the securities that they had relied only upon the offering documents. They then sued under the securities laws for alleged oral misrepresentations, and were unsuccessful. The subscription agreement contained the following indemnity clause:

> [each plaintiff agreed] to indemnify and hold harmless the Partnership, the General Partner, its affiliates and participating broker-dealers from and against all damages, losses, costs and expenses (including reasonable attorneys' fees) which they may incur by reason of . . . any breach of the representations and warranties made by the undersigned herein. . . .

*Id.* at 831. The *Doody* court held:

> The Court finds that enforcing an indemnity provision such as the one in the

instant action would discourage prospective plaintiffs from bringing securities fraud actions whenever there is an integration clause in a subscription agreement. Prospective plaintiffs would be discouraged because the plaintiffs would be running the risk of incurring substantial liability for attorneys' fees and costs. *Since the securities laws are a remedial measure intended to encourage the prosecution of securities fraud actions, the Court refuses to enforce this indemnity provision.*

*Id.* at 833 (emphasis added).

Other courts have not taken such an absolute stance, recognizing a seller's legitimate interest in receiving accurate information from a buyer, particularly in order to conduct a private placement offering. The court in *Barnebey v. E.F. Hutton & Co.*, 715 F.Supp. 1512 (M.D.Fla.1989), distinguished the *Doody* court's analysis, quoting with approval the lower court's decision in *Zissu v. Bear, Stearns & Co.*[3]:

> [i]f this indemnification agreement is not enforceable, it would undermine the securities laws to the extent that investors would be free to make misrepresentations with impunity and issuers would be wholly unable to accurately assess the qualifications of potential investors in risky ventures such as this one.

*Id.* at 1522. The *Barnebey* court did not actually give effect to the indemnity provision, however; it denied the plaintiff's motion to declare the indemnity clause unenforceable on public policy grounds.

The most specific case regarding the indemnity at issue here is *Zissu v. Bear, Stearns & Co.*, 805 F.2d 75 (2d Cir.1986). Plaintiff sued under the securities laws, based in part on alleged oral misrepresentations. Plaintiff had warranted in his subscription agreement that he had relied only upon the written offering materials, and he agreed to indemnify and hold defendants harmless "against any and all loss, damage or liability due to or arising out of a breach

---

**3.** 627 F.Supp. 687 (S.D.N.Y.1986); *but see* 805 F.2d 75 (2d Cir.1986).

of any representation or warranty." Plaintiff lost his suit, and defendants counterclaimed for their attorneys' fees based on that indemnity agreement. The *Zissu* court stated that contracts allowing recovery of attorneys' fees in securities suits did not violate the securities laws *per se.* However, the court declined to award defendants their attorneys' fees based on that indemnity agreement. The court explained:

> The clause Zissu signed did not put him on notice that he would be responsible for defendants' legal fees incurred in the security fraud suit. In fact, no mention of attorney's fees was made in the indemnification clause. Instead, the warranties in question were necessary to exempt the limited partnership from the requirements of the 1933 Act and are so understood by investors. That being the case, the parties had little reason to expect that such warranties might also be the basis for the counterclaim made in the present case. Thus, although New York courts have held that contractual indemnity provisions for attorney's fees will be enforced, and broad indemnification provisions like the one here should be read to extend to such fees, *a higher level of specificity is required when attorneys' fees are being assessed against a plaintiff suing for securities fraud.*

*Id.* at 79–80 (citations omitted) (emphasis added).

A similar position was stated in "Contractual Shifting of Defense Costs in Private Offering Securities Litigation," 136 U.Pa.L.Rev. 971 (1988), in which the author concludes:

> Sellers of private offerings claiming an exemption from the registration provisions of federal securities law should be entitled to enforce indemnification clauses included in the subscription documents in the proper circumstances. To be eligible to do so, the seller must have complied fully with federal securities laws, *including disclosing the existence and effect of the indemnification clause.*

*Id.* at 1002 (emphasis added).

■ Congress has long provided that the proper balance between protecting investors and promoting capital formation is reached by full disclosure of the risks involved in an investment. Full disclosure is at the heart of the federal securities laws. *Id.* at 974. The same principle should apply in the context of indemnification agreements in securities purchases. Sellers should not be absolutely barred from enforcing by indemnity agreements the warranties and representations made by buyers. However, as the *Zissu* court stated, if those indemnity provisions are to include defendants' attorneys' fees incurred in suit by buyers for securities laws violations, such an inclusion should be very clear.

■ Defendants here argue that this indemnity clause explicitly mentions attorneys' fees, unlike the one in *Zissu.* Therefore, defendants believe that this indemnity provision was specific. However, the reasoning in *Zissu* went beyond the mere presence or absence of the words "attorneys fees" in the clause. The court pointed out that the main purpose of the warranties and representations was to protect the private placement exemption, as it is here. In that context, plaintiffs had little reason to anticipate that the indemnity provision would apply to suits by the buyers themselves against the sellers for securities act violations.

Finally, as already noted, the last sentence of the indemnity clause provides that plaintiffs do not waive their rights under the securities laws. One of those rights is that they are not liable for attorneys' fees unless their suit is frivolous. 1933 Securities Act § 11(e), 15 U.S.C. § 77k(e). If the indemnity clause is to impose upon them liability for attorneys' fees on a different basis, that statement should be explicit.

### V.

In summary, the court concludes that the indemnity clause here did not explicitly provide that plaintiffs would be liable for defendants' attorneys' fees in the event of an unsuccessful securities law suit by plaintiffs, and the clause therefore may not be enforced in that manner.

IT IS THEREFORE ORDERED that:

1. Defendants' motions for summary judgment to enforce the indemnity clause of the Subscription Agreement are denied;

2. Plaintiffs' motions for summary judgment to preclude enforcement of the indemnity clause are granted; and

3. The motions of defendants Combs and Guy for leave to file counterclaims based upon the indemnity clause are denied.