Williams, PJ.
The plaintiff, Carlos R. Melo (“Melo”), brought this summary process action to establish his right to possession of a house in Randolph occupied by the defendant, Mirlene Villarcon (“Villarcon”), after he bought that house at a foreclosure sale. Melo also sought use and occupancy payments. Melo prevailed on his motion for summary judgment for possession, and the motion judge subsequently allowed Melo’s motion under Mass. R. Civ. P., Rule 54(b), for separate and final judgment, while expressly talcing no action on Villarcon’s counterclaims. Although the complex history of this case, which involves proceedings in Suffolk Superior Court, Land Court, and United States Bankruptcy Court besides Quincy District Court, might present substantive foreclosure law issues, Villarcon challenges as a threshold matter the ripeness of the judgment when unresolved counterclaims remain in the action, and when the motion judge has not expressly determined that there is no just reason for delaying judgment and has not expressly directed entry of judgment For his part, Melo argues that Villarcon’s prior discharge in bankruptcy divested her of standing to challenge any purported deficiencies in the foreclosure proceeding. Although we discern some inconsistency regarding the judgment, we find that Villarcon had no viable counterclaims so as to render the judgment unripe, that the lack of strict compliance with Mass. R. Civ. P., Rule 54(b), also did not compromise the ripeness of the appeal, and that Villarcon’s bankruptcy discharge deprived her of standing so as to challenge the validity of the bank foreclosure on the subject house and therefore Melo’s purchase of it. We therefore affirm the judgment in Melo’s favor, but also return the action to Quincy District Court for further proceedings consonant with this opinion.
In 2006, Villarcon bought the subject house in Randolph; in 2008, she defaulted on the mortgage. Preforeclosure notices (the sufficiency of which Villarcon has challenged[1]) were provided to Villarcon. In January, 2009, Villarcon filed a voluntary petition under Chapter 7 of the United States Bankruptcy Code. As part of that bankruptcy *33 action, she filed an intention to surrender the house to U.S. Bank National Association (“U.S. Bank”). Villarcon received a discharge in the bankruptcy action in April, 2009; the Bankruptcy Court discharged the trustee and ordered the case closed. Seven months later, in November, 2009, U.S. Bank initiated foreclosure proceedings. Melo bought the property at the foreclosure sale, and the following day sent Villarcon a notice to quit Melo closed on the property in December, 2009. In March, 2010, Melo commenced this summary process action to secure possession of the property and use and occupancy in the amount of $6,000.00. Villarcon counterclaimed against Melo on the following theories: disability discrimination, breach of the warranty of habitability, breach of the covenant of quiet enjoyment and violation of G.L.c. 93A (unfair and deceptive trade practices).
In June, 2010, the trial court scheduled trial for September, 2010. Shortly after trial had been scheduled, however, in early July, Villarcon commenced an action in Suffolk Superior Court[2] That action concluded in December, 2013, when Melo’s motion for summary judgment was allowed on the ground that Villarcon lacked standing to challenge the foreclosure and attempted eviction because, in essence, such claims belonged not to her, but to her bankruptcy estate. Thereafter, in this District Court action, the trial judge invited both parties to move for summary judgment, which they did. Villarcon’s was denied. Melo’s was granted, at least on the issue of possession. The motion judge here found that although principles of judicial estoppel might not apply, any defects in the right-to-cure notice to Villarcon were not meaningful given the anomaly of mandating such a notice to someone who had discharged the mortgage debt;[3] *34 thus, any such defects in the notice did not defeat Melo’s superior right of possession. This appeal followed.
Both parties raise threshold issues. Villarcon urges that because the motion judge did not rule on her counterclaims and did not satisfy Mass. R. Civ. P., Rule 54(b), there is no final judgment in the case and so no ripe appeal. In such a case, she observes, in which “fewer than all of the claims” in the case are resolved by summary judgment, the court must make “an express determination that there is no just reason for delay” for entry of judgment on the resolved claims, and must make “an express direction for the entry of [such] judgment.” Mass. R. Civ. P., Rule 54(b).[4] Here, although he allowed Melo’s motion for separate and final judgment, the motion judge did not make these rulings. Villarcon argues that the appeal is therefore fatally flawed.
“Whether there are multiple claims in an action and whether those claims have been finally adjudicated are matters of law subject to plenaiy review by an appellate court.” Downey v. Chutehall Constr. Co., 86 Mass. App. Ct. 660, 669 (2014), quoting Long v. Wickett, 50 Mass. App. Ct. 380, 386 (2000). That the judge did not address Villarcon’s counterclaims against Melo is of small moment. Three of those purported counterclaims were nullities ab initio. Villarcon counterclaimed on the following theories: disability discrimination, breach of the warranty of habitability, breach of the covenant of quiet enjoyment, and breach of G.L.c. 93A (unfair and deceptive trade practices) .[5] Counterclaims grounded in the last three of those theories never properly *35 lay against Melo.[6]
Between Villarcon and Melo, there was no landlord-tenant or other relationship cognizable in the summary process context The parties here occupy the precise positions of those in Boudreau v. Ganter, 2010 Mass. App. Div. 174. “Summary process is a purely statutory procedure and can be maintained only in the instances specifically provided for in the statute.” Id. at 176, quoting Cummings v. Wajda, 325 Mass. 242, 243 (1950). See also Bank of Am., N.A. v. Rosa, 466 Mass. 613, 618 (2013). As we observed in Boudreau, “[s]ummary process is available in a host of contexts, apart from the typical landlord-tenant scenario in which premises are rented or leased.” Id. at 176 n.1, citing G.L.c. 239, §1. Among those circumstances is the use of summary process by a bank after a foreclosure sale to evict the former owners who fail to vacate the subject premises. “In that situation,... the foreclosing bank does not rent or lease the premises to the former homeowner and makes no warranties to them, impliedly or otherwise, regarding the condition of the premises.” Id. As Boudreau did not rent the subject house to Ganter there, Melo did not rent the house to Villarcon here, and made no warranties to her. “Indeed, *36 it would be nonsensical to impose on a foreclosing bank [or, as in Boudreau and here, a purchaser at foreclosure] liability for the condition of property that had, at all times, been in the sole control of the former homeowners.” Id. Claims against Melo concerning habitability or quiet enjoyment are therefore unavailable to Villarcon.
Finally, as to Villarcon’s counterclaim that Melo had violated G.Lc. 93A by seeking to evict her when he lacked any legitimate possessory interest in the house and by refusing to allow her more time to stay there, we simply observe that there was no relationship between the parties that could trigger a claim of unfair or deceptive business practices under G.Lc. 93A. “Chapter 93A prohibits ‘unfair or deceptive acts or practices in the conduct of any trade or commerce.’” Wodinsky v. Kettenbach, 86 Mass. App. Ct. 825, 833 (2015), quoting G.L.c. 93A §2 (a). “The ‘basic policy [of c. 93A] is to ensure an equitable relationship between consumers and persons engaged in business.’” Id., quoting Heller v. Silverbranch Constr. Corp., 376 Mass. 621, 624 (1978). “However, ‘[transactions that are “principally private in nature ... do not fall within the purview of G.Lc. 93A’” Office One, Inc. v. Lopez, 437 Mass. 113, 125 (2002), quoting Zimmerman v. Bogoff, 402 Mass. 650, 662 (1988).” Id. Here, even seeking to define a “transaction” between the parlies proves quixotic.[7] Villarcon’s G.Lc. 93A claim could not lie against Melo.[8]
Itis true that the motion judge did not comply with Mass. R. Civ. P., Rule 54(b), in that he failed to determine expressly that there is no just reason for delaying the entry of judgment and to direct expressly the entry of judgment But because the parties have fully — indeed, exhaustively — briefed numerous issues in this matter, including those already discussed, we elect to address those issues as necessary. Dolores v. Gustafson, 2009 Mass. App. Div. 267, 268 n.4, citing Chavoor v. Lewis, 383 Mass. 801, 803 (1981).[9] We do so after “balancing the need for immediate review, based on the likelihood of injustice or hardship to the parties *37 of a delay in entering a final judgment as to part of the case, against the appellate courts’ ‘traditional abhorrence of piecemeal appellate review,’... as a matter of sound judicial administration.” Morrissey v. New England Deaconess Ass’n - Abundant Life Communities, Inc., 458 Mass. 580, 594-595 (2010), quoting Atkinson’s Inc. v. Alcoholic Beverages Control Comm’n, 15 Mass. App. Ct. 325, 327 (1983). Recognizing the ‘bedrock policy against premature and piecemeal appeals,” id. at 595, quoting Long, supra at 388, we determine nevertheless that because of the nullity of Villarcon’s counterclaims, the chief claimed impediment to final judgment diere exists here that rare exception to even insisting upon the sparing exercise of Rule 54(b). See id. at 594-595, citing Long, supra at 389. See also Dolores, supra at 268 n.4.
Turning to Melo’s claim thatVillarcon’s challenge to any foreclosure deficiencies is foreclosed by her discharge in bankruptcy, we begin, and end, with Souza v. Bank of Am., N.A., U.S. Dist. Ct. No. 1:13-CV-10181-PBS (D. Mass. July 8, 2013). In Souza, the Federal District Court considered the defendants motion to dismiss the action on the ground of judicial estoppel (see note 3, supra). The mortgage of the plaintiff (“Souza”) was eventually acquired by Bank of America (“Bank”) in 2011. Souza had defaulted on her mortgage in 2010. In 2012, she commenced a voluntary bankruptcy, in which case she filed a statement of intent indicating that she would surrender her home in order to achieve a bankruptcy discharge. Souza received “a discharge of her debt, meaning she received a discharge of her personal liability to pay her home loan.” Id. Notices of foreclosure were provided to Souza in January, 2013.
In the ensuing action, Souza alleged, inter alia, that the Bank had failed to provide her a right-to-cure notice as required by G.Lc. 244, §35A The Souza Court observed that the Bank “logically argues that the requirement to issue a right-to-cure notice under Section 35A is inapplicable where the debtor is not in ‘default on her mortgage because her personal debt was discharged in bankruptcy.” Id. Additionally, Souza had surrendered her interest in the property. “[Tjhe surrender of property in a Chapter 7 bankruptcy proceeding occurs where ‘the debtor agree [s] to make the collateral available to the secured creditor — viz., to cede his possessory rights in the collateral — within 30 days of the filing of the notice of intention to surrender possession of the collateral’” (emphasis in original). Id., quoting In re Pratt, 462 F.3d 14, 19 (1st Cir. 2006). “The discharge of a homeowner’s promissory note in bankruptcy does not impede the lender’s ability to foreclose the homeowner’s interest in the real estate serving as collateral for the debt, even though the discharge does prevent the lender from recovering against the borrower personally.” Id., citing In re Canning, 706 F.3d 64, 69 (1st Cir. 2013).
The Bank also urged that Souza’s claims fall before the doctrine of judicial estoppel (see note 3, supra). “[Tjhe doctrine of judicial estoppel prevents a mortgagor from challenging the ‘foreclosure of the same property that [sjhe surrendered in the Bankruptcy Court in exchange for the discharge of [her] debts.’” Id., quoting Ibanez v. U. S. Bank Nat'l Ass’n, 856 F. Supp. 2d 273, 275 (D. Mass. 2012). “‘[Ejven were there a [plausible] claim, it does not belong to [the mortgagor]’ but instead to the bankruptcy trustee.” Id, quoting Ibanez, supra at 276. “Because Souza surrendered her home in bankruptcy, the doctrine of judicial estoppel bars her claims challenging the foreclosure process.” Id. “ [E] quity will *38 not permit” challenge to the foreclosure of the “same property that [was] surrendered in the Bankruptcy Court in exchange for the discharge of... debts.” Ibanez, supra at 275.
'Villarcon occupies exactly the position as Souza did in her case. We are persuaded by the holding of Souza and the cases cited therein, especially as their logic is bolstered by the analysis of the motion judge (see note 3, supra), which underscored the illogic of allowing a discharged bankrupt to challenge the foreclosure of a house, interest in which she had surrendered. To the extent that some bankruptcy courts, including one in Massachusetts, support a different result, we decline to follow them.
“An order granting... summary judgment will be upheld if the [motion] judge ruled on undisputed material facts and his ruling was correct as a matter of law.” Crown v. Kobrick Offshore Fund, Ltd., 85 Mass. App. Ct. 214, 226 (2014), quoting Commonwealth v. One 1987 Mercury Cougar Auto., 413 Mass. 534, 536 (1992). See Mass. R. Civ. P., Rule 56(c). Given the result we reach, we do not proceed to analyze the substantive foreclosure issues otherwise raised in this action, except to note that even had we reached them, we would be disinclined to find that under US. Bank Nat'l Ass’n v. Schumacher, 467 Mass. 421 (2014), the bank’s noncompliance with paragraph 22 of the mortgage, on which Villarcon focuses, rendered the foreclosure fundamentally unfair. Id. at 433 (Gants, J., concurring).
One final point, and the only issue we return to the Quincy District Court for consideration, is some procedural confusion regarding arguable inconsistencies between decision and judgment Melo moved for summary judgment “on his claim for possession... and for the use and occupancy previously ordered by this Court and the Suffolk Superior Court” In his decision, though, the motion judge explicitly declared that “[t]he only determination made by the court is that [Melo] has a superior title.” There was, accordingly, no decision on any monetary damages. Melo then moved for separate and final judgment on his claim for possession. The motion judge allowed that motion, noting only that “[t]he issue of use and occupancy may be scheduled for hearing by the parties.” Thus, the money-damages aspect of the case — on which Melo had also moved for summary judgment — was again not addressed. The judgment itself reflected zero for monetary damages, although it was a judgment “for possession and rent’; it then recited that it had been ordered and adjudged by the court that Melo recover of Villarcon possession and “unpaid rent, use and occupation” and recited the “‘Judgment Total’ shown below plus other costs as may be taxed pursuant to law, with post judgment interest” For “Next Court Event (If Any),” the clerk’s office had noted in bold, ‘No Future Event Scheduled.” The docket also recites that judgment had entered for “Possession and Rent”[10] The motion judge explicitly did not rule on moneys owed, if any.
We affirm the allowance of Melo’s motion for summary judgment for possession of the subject house. We return the money-damages aspect of the action to Quincy District Court for its determination of whether and, if so, in what amount Villarcon is liable to Melo for use-and-occupancy payments, so as to bring into alignment the motion judge’s decision and the judgment in this action.[11]
So ordered.

 Villarcon argues that the power of sale in paragraph 22 of the mortgage required that she be provided notice before acceleration that advised her of her right to bring a court action to assert the nonexistence of a default or any other defense to acceleration and sale she might have, and that she did not receive any such notice.

 The record before us contains only the memorandum of decision and order (Lauriat, J.) from that Superior Court action. From it, and from Melo’s suggestions in his brief, which have passed without contradiction, we gather that Villarcon brought suit alleging numerous claims against several parties, including Melo, alleging that the foreclosure sale was invalid and that Melo did not properly hold title to the house. In November, 2010, the Superior Court preliminarily enjoined Melo from proceeding with Villarcon’s eviction, conditioned upon her monthly payment to Melo of $1,357.10. Only Melo, in his motion for summary judgment; raised the question ofVillarcon’s standing in light of her Chapter 7 bankruptcy discharge. In December, 2013, the Superior Court, in its ten-page memorandum, allowed Melo’s motion.

 In her bankruptcy case, Villarcon had declared her intent to surrender property, including the subject house, rather than to reaffirm her debt in that regard or to redeem the property. The doctrine of “0 judicial estoppel is an equitable doctrine that precludes a party from asserting a position in one legal proceeding that is contrary to a position it had previously asserted in another proceeding.” Otis v. Arbella Mut. Ins. Co., 443 Mass. 634, 639-640 (2005), quoting Blanchette v. School Comm. of Westwood, 427 Mass. 176, 184 (1998). Here, Villarcon had “surrendered” the house in the bankruptcy action — and thereby received the benefit of a bankruptcy discharge — and now, inconsistently, argues that the foreclosure on that house was faulty, with the result that she would retain at least possession, if not ownership, of it. Despite his lengthy analysis of judicial estoppel, the motion judge centered his decision on the anomaly that there was no meaningful way to provide the right-to-cure notice to Villarcon after her debt on the mortgaged property had been discharged. As he observed, “[s] imply put, if after bankruptcy discharge a mortgage holder was required to comply with the identified notice requirements, compliance would either be impossible, thus forever preventing a foreclosure, or the notice would invite a claim that the mortgagor [sic] is *34 violating the discharge by requesting payment on a debt that has been discharged and, thereby, acting in a wilfully unfair manner.”

 Rule 54(b) provides in pertinent part “When more than one claim for relief is presented in an action,... the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.”

 Villarcon also prayed for the relief of imposing on Meló a constructive trust for her benefit “If a defendant is unjustly enriched by the acquisition of title to identifiable property at the expense of the claimant or in violation of the claimant’s rights, the defendant may be declared a constructive trustee, for the benefit of the claimant, of the property in question and its traceable product” Shehan v. Schlegel, No. 13-P-1577 (Mass. App. Ct. Oct. 31, 2014) (unpublished Rule 1:28 decision), quoting RESTATEMENT (THIRD) OF RESTITUTION AND UNJUST ENRICHMENT §55(1), at 296 (2011), and citing Mickelson v. Barnet, 390 Mass. 786, 790 (1984). Although a constructive trust is an equitable remedy, it might be that a count requesting such a declaration may be allowed or denied in summary judgment See Gatof v. Northland Inv. Corp., Middlesex Superior Court, No. 11-CV-4451-F (Oct. 20, 2014), and cases cited. In any event, the imposition of a constructive trust must be grounded in fraud, a breach of fiduciary duty, or other wrongful use of confidential information that benefits the recipient at the expense of the person who disclosed the information. Superior Glass Co. v. First Bristol County *35 Nat'l Bank, 8 Mass. App. Ct. 356, 361 (1979), citing Barry v. Covich, 332 Mass. 338, 342 (1955). There is scant intimation here that Melo had engaged in fraud (not pleaded here), that he had a fiduciary duty to Villarcon, or that he learned from Villarcon some confidential information and wrongfully used it against her.

 The sole counterclaim not doomed, but perhaps severely hobbled, from the beginning as a matter of law was Villarcon’s claim of disability discrimination. She alleged, without amplification (her answer and counterclaim were not set out on a preprinted limited form, see Bank of Am., N.A v. Rosa, 466 Mass. 613, 615 n.4, 616 n.5 (2013), but rather in seven pages), that “previously” Melo had denied her “request for additional time to relocate based on her children’s health needs.” Three of Villarcon’s children have “health problems” and two of them require “specialized education due to learning disabilities.” (Villarcon’s G.L.C. 93A claim against Melo was based on the same conduct) A claim for unlawful discrimination under G.L.c. 151B “that could vitiate the title, or possession, of the plaintiff... seeking... eviction” may be asserted as a counterclaim in a postforeclosure summary process action. Rosa, supra at 625-626. But to consider Villarcon’s allegation that Melo had denied her time to relocate as constituting a claim that could vitiate Melo’s right to possession would be, to phrase it conservatively, a stretch. (Indeed, it could be argued that this claim, rather than seeking to eviscerate Melo’s right to possession, acknowledges his ultimate or eventual right to possession.) Without diving into tile deep seas of civil rights and discrimination law, we note, too, that Rosa did not address the exclusivity provision of G.L.C. 151B, §9. See §9 (although “[tjhis chapter shall be construed liberally for the accomplishment of its purposes,... as to acts declared unlawful by section 4, the administrative procedure provided in this chapter under section 5 shall, while pending, be exclusive”). Discrimination claims, in short, are governed by G.L.c. 151B, which provides for the handling of such claims, with some possible exceptions, by the Massachusetts Commission Against Discrimination, created by G.L.c. 6, §56, before any judicial review becomes available. Whether a counterclaim in a summary process action is, or should be, deemed exempt from such a procedure is unknown. We decide in any event that such a fragile claim as this one, which does not even seem to meet the Rosa criteria for a discrimination counterclaim, should not prevent the finality we land upon at the end of our discussion of the counterclaims generally.

 The legal distance between Villarcon and Melo is also signaled by Melo’s apparent status as a bona fide purchaser of the subject house. Melo relies on Jenne v. Aurora Loan Servs., LLC, Massachusetts Land Court, No. 13-MISC-477489 0une 26,2014), a trial court decision, and authorities cited therein, to urge that even if there had been a formal defect in the preforeclosure notices to Villarcon, Melo’s status as a bona fide purchaser means that his title is not affected by such an infirmity absent his prior knowledge of it. Although we do not adopt that position as a basis of our decision here, we recognize its cogency.

 Had a G.L.c. 93A claim been available to Villarcon here, she, as a counterclaimant, would not have been required to provide Melo a demand letter for relief before asserting such a claim. G.L.c. 93A, §9(3). See, e.g., Russo’s Marine Mart, Inc. v. Harris, No. 13-P-95 (Mass. App. Ct. March 18, 2014) (unpublished Rule 1:28 decision). But see deBettencourt v. Aronson, No. 11-P-1201 (Mass. App. Ct. June 13, 2012) (unpublished Rule 1:28 decision).

 In Federal Nat’l Mtge. Ass’n v. Fiumara, 2014 Mass. App. Div. 113, a postforeclo-sure case, as here, this Division recently noted that “as the counterclaims have not been decided, this appeal is subject to ‘the basic rule that interlocutory orders are not subject to appellate review until the entire case has been disposed of at the trial level.’” Id., quoting Dolores, supra at 268 n.4. Fiumara was a per curiam decision — which, again, itself cited Dolores — that remarked in a footnote that the only substantive issue presented in the case had been decided since oral argument by the Supreme *37 Judicial Court in U.S. Bank Nat'l Ass’n v. Schumacher, 467 Mass. 421 (2014). The circumstances presented in Fiumara thus' differ significantly from those presented in this long-running and hydra-headed case, which compellingly cries out for some measure of finality.

 The docket reflects that although the appeal bond had been waived, the court ordered monthly payments, presumably for use and occupation, of $1,357.10 to commence on July 1,2014.

 While Villarcon’s appeal was pending before this Division, Melo filed a motion to dismiss the appeal for Villarcon’s alleged failure to make monthly payments for use and occupation. We take no action on the motion.